No. 22-50314

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JESUS PEREZ-GARCIA,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of California
Honorable Gonzalo P. Curiel, Presiding,
Case No. 22-CR-1581-GPC-2

**BRIEF OF *AMICUS CURIAE* CIVIL RIGHTS CORPS
IN SUPPORT OF NEITHER PARTY**

Ellora Thadaney Israni
Ryan Downer
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Ste. 800
Washington, D.C. 20009
(202) 894-6132

*Counsel for Amicus Curiae*

## FRAP 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, amicus Civil Rights Corps has no corporate parent. No publicly owned company owns 10% or more stock in amicus Civil Rights Corps.

Dated: January 10, 2023　　　　　　　/s/ Ellora Thadaney Israni
　　　　　　　　　　　　　　　　　　Ellora Thadaney Israni
　　　　　　　　　　　　　　　　　　Of Counsel for *Amicus Curiae*

**TABLE OF CONTENTS**

INTEREST AND IDENTITY OF *AMICUS CURIAE* ..............................................1

ARGUMENT ...............................................................................................................1

I. THE POWER TO DETAIN PRETRIAL DOES NOT INSULATE PRETRIAL RELEASE CONDITIONS FROM CONSTITUTIONAL REVIEW. ................3

II. THE GOVERNMENT'S ARGUMENT HAS FAR-REACHING IMPLICATIONS THAT THREATEN A FREE SOCIETY. ............................6

CONCLUSION .......................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ................................................................. 5

*Block v. Rutherford*, 468 U.S. 576 (1984) ................................................................ 10

*Carey v. Population Servs., Int'l*, 431 U.S. 678 (1977) ............................................ 10

*In re Humphrey*, 482 P.3d 1008 (Cal. 2021) ............................................................. 1

*Katz v. United States*, 389 U.S. 347 (1967) ............................................................. 11

*Lawrence v. Texas*, 539 U.S. 558 (2003) .................................................................. 10

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) ................................... 4, 5

*Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494 (1977) ..................................... 10

*Robles v. Allen*, No. 1CA-SA20-0192 (Ariz. Ct. App.) .............................................. 1

*State v. Hansen*, No. S068166 (Or. Sup. Ct.) ............................................................. 1

*United States v. Collins*, No. 11-CR-00471, 2012 WL 3537814 (N.D. Cal. Mar. 16, 2012) ..................................................................................................................... 7, 8

*United States v. Fencl*, No. 21-CR-03101, 2022 WL 17486363 (S.D. Cal. Dec. 7, 2022) ........................................................................................................................ 2

*United States v. Perez-Garcia*, No. 22-CR-01581, --F. Supp. 3d--, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022) ........................................................................... 2

*United States v. Quiroz*, No. 22-CR-00104, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) ............................................................................................................. 6, 10

*United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010) .................................................9

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................. 2, 4, 5

*United States v. Scott*, 450 F.3d 863 (9th Cir. 2006) ................................... 1, 3, 8, 9

*United States v. Van Leeuwen*, 397 U.S. 249 (1970) ................................................11

*United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996) .........................................11

*United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012) .....................................9

*Valdez-Jimenez v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 460 P.3d 976 (Nev. 2020) ......................................................................................................................1

**Statutes**

Bail Reform Act of 1984, 18 U.S.C. § 3142 ...............................................................4

**Articles**

Aneesha Cheedalla & Carolyn B. Sufrin, *Contraception Policies in U.S. Jails, Prisons, and Juvenile Detention Systems*, J. CORR. HEALTH CARE (Dec. 2021)..11

Jay W. Borchert, *Controlling Consensual Sex Among Prisoners*, 41 LAW & SOC. INQUIRY 595 (2016) ...............................................................................................10

Joe Garcia, *Why Prisoners Like Me Need Internet Access*, MIT Technology Review (June 30, 2021) ...........................................................................................7

Maxine Bernstein, *No-protest condition will be dropped for people facing federal charges in Portland demonstrations*, THE OREGONIAN (July 29, 2020) ...............8

Note, *Striking the Right Balance: Toward a Better Understanding of Prison Strikes*, 132 Harv. L. Rev. 1490 (2019).................................................................8

**Other Authorities**

Fed. Bureau of Prisons, Mail Management Manual (2011)...........................11

Gov't Response to Mot. for Review of Pretrial Conditions, *United States v. Perez-Garcia*, No. 3:22-cr-01581-GPC, Doc. 46 ..........................................................2

## INTEREST AND IDENTITY OF *AMICUS CURIAE*

*Amicus* Civil Rights Corps ("CRC") is a nonprofit organization that engages in legal, policy, and other advocacy nationwide. CRC has litigated cases about pretrial detention and release in dozens of jurisdictions, including four states within this Circuit. *See In re Humphrey*, 482 P.3d 1008 (Cal. 2021); *Valdez-Jimenez v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 460 P.3d 976 (Nev. 2020); *State v. Hansen*, No. S068166 (Or. Sup. Ct.); *Robles v. Allen*, No. 1CA-SA20-0192 (Ariz. Ct. App.).[1] In so doing, CRC has developed an institutional expertise in the constitutional requirements attendant to pretrial detention and release conditions. Pursuant to Federal Rule of Appellate Procedure 29(a), CRC submits this brief to outline those requirements for the Court's consideration.[2]

## ARGUMENT

"[I]nnocence can only raise an inference of innocence, not of guilt." *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006). And because persons charged with crimes are "constitutionally presumed to be innocent pending trial," *id.*, "liberty is the norm, and detention prior to trial . . . the carefully limited

---

[1] Additional cases litigated by CRC regarding pretrial detention and release are listed *infra* in an Addendum.

[2] No counsel for a party authored this brief in whole or in part. No such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amici curiae, their members, or their counsel made a monetary contribution to its preparation or submission. The parties have consented to the filing of this brief.

1

exception," *United States v. Salerno*, 481 U.S. 739, 755 (1987). This principle applies to infringements on not just liberty but also other fundamental rights—such as, at issue here, the right to bear arms.

The government's lead argument, and the decision below, flips the presumption of innocence and the attendant constitutional protections on their head. The government argues that its power to detain a person prior to trial under the circumstances outlined in *Salerno* effectively insulates most—if not all—conditions of pretrial release from constitutional review. That is, "if the government has the greater power to put a defendant in custody pending trial and deny him the right to possess a firearm altogether" (which *Salerno* permits only if certain substantive and procedural conditions are met), the government argues "it must also have the lesser power to release him subject to reasonable conditions" such as restrictions on gun possession. Gov't Response to Mot. for Review of Pretrial Conditions, *United States v. Perez-Garcia*, No. 3:22-cr-01581-GPC, Doc. 46 at 21. The District Court—and at least one other court in this Circuit—cite *Salerno* for the proposition that the government has unfettered powers to restrict a person's fundamental rights, via detention or otherwise, prior to trial. *See United States v. Perez-Garcia*, No. 22-CR-01581, --F. Supp. 3d--, 2022 WL 4351967, at *6 (S.D. Cal. Sept. 18, 2022); *United States v. Fencl*, No. 21-CR-03101, 2022 WL 17486363, at *3 (S.D. Cal. Dec. 7, 2022).

Not so. As a constitutional matter, the government's power to strip a person of their liberty prior to trial, if and when rigorous standards and procedures are followed, does not imply the power to impose a panoply of pretrial conditions that infringe upon other fundamental rights without reference to such standards and procedures. Indeed, *Salerno* says nothing of the sort. This novel argument by the government misconstrues the relevant law. And its implications extend beyond the Second Amendment, to all conditions of pretrial release that implicate fundamental rights.

For these reasons, *amicus* urges this Court to reject the government's invitation to uproot decades of precedent and insulate pretrial release conditions from constitutional scrutiny.

I. **THE POWER TO DETAIN PRETRIAL DOES NOT INSULATE PRETRIAL RELEASE CONDITIONS FROM CONSTITUTIONAL REVIEW.**

"The right to keep someone in jail does not in any way imply the right to release that person subject to unconstitutional conditions—such as chopping off a finger or giving up one's first-born." *Scott*, 450 F.3d at 866 n.5. "Once a state decides to release a criminal defendant pending trial, the state may impose only such conditions as are constitutional . . . ." *Id.* As such, "restrictions on pretrial release . . . must be carefully limited to serve a compelling governmental interest."

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (citing *Salerno*, 481 U.S. at 748–51).

*Salerno* did not authorize a constitutional loophole. The defendants in *Salerno* challenged the Bail Reform Act of 1984 under the Due Process and Excessive Bail clauses. 481 U.S. at 746. The Act governs pretrial detention and release in the federal system and lays out a cascade of options requiring minimal deprivation of fundamental rights before trial. The Act requires that a person be released pending trial "subject to the least restrictive condition, or combination of conditions, that [a] judicial officer determines will reasonably assure" court appearance and community safety. 18 U.S.C. § 3142(b)–(c). Pretrial detention is permitted only if a judicial officer finds, at a timely hearing with rigorous procedural protections (including representation by counsel, an opportunity to testify and present evidence, a clear-and-convincing-evidence standard of proof, and written findings of fact and law), that no less restrictive alternative conditions will reasonably assure return to court and community safety. *Id.* § 3142(e)–(f). Satisfied by these exacting substantive and procedural protections, the Court held that the Act was not facially unconstitutional. *Salerno*, 481 U.S. at 755.

In so doing, the Court made several notable statements—and just as importantly, did not make others. First, the Court's analysis began and ended with Fifth Amendment Due Process and Eighth Amendment Excessive Bail. *See*

4

*Salerno*, 481 U.S. at 746. The Court did not contemplate any other constitutional provisions, such as the First, Second, or Fourth Amendments.

Second, *Salerno* was a challenge to pretrial *detention*; it did not wade into the analysis applicable to conditions of pretrial *release*. The constitutional frameworks are meaningfully different. Pretrial detention implicates the government's interest in security and management of a jail facility. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979). As such, jail restrictions and conditions, even those that burden fundamental rights, need only be "reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion." *Id.* at 539. But outside the four walls of a jail, no such operational interests arise. As such, as a constitutional matter, "restrictions on pretrial release . . . must be carefully limited to serve a compelling governmental interest." *Lopez-Valenzuela*, 770 F.3d at 777. Because these legal frameworks differ, courts cannot reflexively impose the restrictions attendant to pretrial detention on pretrial releasees simply because, had they made the findings necessary to detain pretrial (though they did not), those restrictions would have been implied by detention.

Finally, *Salerno* emphasized that restrictions on liberty prior to trial must be a "carefully limited exception." 481 U.S. at 755. The government's argument here that *Salerno* insulates release conditions from any constitutional scrutiny

5

whatsoever turns this presumption on its head. *Salerno* says that the government may, in narrow scenarios, detain a person prior to trial subject to rigorous procedural and substantive guardrails. A logical chasm separates that power from the distinct capacity now asserted, which would allow the government to impose a panoply of pretrial conditions restricting fundamental rights on any person *absent constitutional guardrails or review*.

As such, the government's suggestion that *Salerno* automatically authorizes any condition of pretrial release that would be implied by pretrial detention is contrary to law.

## II. THE GOVERNMENT'S ARGUMENT HAS FAR-REACHING IMPLICATIONS THAT THREATEN A FREE SOCIETY.

"A free society prefers to punish the few who abuse rights of the people after they break the law than to throttle them and all others beforehand." *United States v. Quiroz*, No. 22-CR-00104, 2022 WL 4352482, at *10 (W.D. Tex. Sept. 19, 2022) (cleaned up). At issue here is pretrial release condition that implicates the Second Amendment. But the government's argument—that the state's power to detain pretrial insulates conditions of pretrial release from constitutional scrutiny—has repercussions far beyond this particular condition or amendment, to all conditions of pretrial release that implicate fundamental rights. If this novel argument by the government were adopted, conditions infringing upon a pretrial releasee's fundamental rights would be automatically permitted, absent any protective

6

standards or procedures, by virtue of the fact that the person could have been detained post-arrest if certain standards (that were not met) had been met. That is contrary to both law and logic.

Take, for example, the First Amendment. In the decades since *Salerno* was decided, courts considering whether pretrial release conditions unconstitutionally impinge upon freedom of speech and association do not merely invoke *Salerno* and call it a day. One court, in striking down a condition that prevented a pretrial releasee from using Twitter, noted that "a defendant who is under court supervision . . . does not necessarily forfeit all of his or her First Amendment rights." *United States v. Collins*, No. 11-CR-00471, 2012 WL 3537814, at *4 (N.D. Cal. Mar. 16, 2012) (citation omitted). Had the defendant been detained prior to trial, his access to Twitter—and the internet, writ large—would have been circumscribed. *See* Joe Garcia, *Why Prisoners Like Me Need Internet Access*, MIT Technology Review (June 30, 2021), https://perma.cc/LZQ7-R9YT (noting that internet access in prison is "almost nonexistent"). But the power to restrict the defendant's First Amendment rights if he were detained did not automatically grant the state the power to infringe upon those same rights upon release. The court concluded that it was "required to [set pretrial release conditions] in a manner which would result in no greater intrusion upon defendant's constitutional rights, including those

7

guaranteed under the First Amendment, than reasonably necessary . . . ." *Collins*, 2012 WL 3537814, at *4 (citation omitted).

Similarly, in 2020, federal magistrates in Oregon began releasing arrested protestors subject to a condition that they not participate in public assemblies or demonstrations pending trial. Public demonstrations are regularly curtailed in detention facilities;[3] however, the condition was promptly dropped after United States Attorneys and federal public defenders agreed that it was unconstitutional when imposed upon pretrial releasees. *See* Maxine Bernstein, *No-protest condition will be dropped for people facing federal charges in Portland demonstrations*, THE OREGONIAN (July 29, 2020), https://perma.cc/LX6M-L74Q.

Pretrial release conditions are subject to Fourth Amendment scrutiny as well. In *United States v. Scott*, this Court struck down a pretrial release condition that required the defendant to submit to random searches of his home, absent a warrant or probable cause. 450 F.3d at 865–75. In so doing, this Court explained that "[n]either *Salerno* nor any other case authorizes . . . the imposition of special bail conditions[] based merely on the fact of arrest . . . ." *Id.* at 874. "*Salerno* was explicit about what must occur . . . before a criminal defendant could be detained": a determination, by clear and convincing evidence, at an adversarial hearing in

---

[3] Note, *Striking the Right Balance: Toward a Better Understanding of Prison Strikes*, 132 HARV. L. REV. 1490, 1502–10 (2019).

8

front of a neutral decisionmaker, that detention was necessary. *Id.* "The government cannot, as it is trying to do in this case, short-circuit the process by claiming that the arrest itself is sufficient to establish that the conditions are required." *Id.* That is precisely what the government here attempts to do: short-circuit the constitutional scrutiny due to any pretrial release condition that implicates a fundamental right.

Courts' analyses of supervised release conditions, too, undermine the government's argument. In *United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012), for example, this Court struck down supervised release condition that prohibited the defendant from seeing children or adults who had children—and thus from seeing his own children and fiancée. Similarly, the Second Circuit in *United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010), struck down a supervised release condition that required the defendant to notify his probation officer upon entry into a "significant romantic relationship." In both cases, the courts subjected the conditions to stringent constitutional scrutiny due to the burden they placed on fundamental rights. *See Wolf Child*, 699 F.3d at 1094 (noting that the condition "implicate[d] a particularly significant liberty interest"); *Reeves*, 591 F.3d at 82–83 ("Where a condition of supervised release impairs a protected associational interest, [the court's analysis] must reflect the heightened constitutional concerns involved." (citation omitted)). Requirements at least as strong as those outlined in

9

*Wolf Child* and *Reeves* should apply pretrial, because pretrial releasees, unlike supervised releasees, remain legally innocent. *Scott*, 450 F.3d at 872.

Adopting the government's argument would mean rolling back constitutional protections under not only the Second Amendment, but also the First, Fourth, and any other amendment that might be implicated by pretrial release conditions. *See Quiroz*, 2022 WL 4352482, at *10 ("[E]xcluding those under indictment from the right of the people to keep and bear arms would operate much like prior restraints in the First Amendment concept."). People released prior to trial could be forbidden from living with or hugging their children,[4] engaging in sexual relationships,[5] obtaining and using contraception,[6] sending or receiving

---

[4] *Compare Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 503 (1977) (striking down housing ordinance that strictly defined "single family" because "the Constitution protects the sanctity of the family"), *with Block v. Rutherford*, 468 U.S. 576, 586, 589 (1984) (holding that "the Constitution does not require that [pretrial] detainees be allowed contact visits" with family members because "there is a valid, rational connection between a ban on contact visits and internal security of a detention facility").

[5] *Compare Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (striking down state anti-sodomy law because "[t]he State cannot demean [the petitioners'] existence or control their destiny by making their private sexual conduct a crime"), *with* Jay W. Borchert, *Controlling Consensual Sex Among Prisoners*, 41 LAW & SOC. INQUIRY 595 (2016) ("Nationwide, prisons bar consensual sex among prisoners, and those who violate this policy face severe punishment . . . .").

[6] *Compare Carey v. Population Servs., Int'l*, 431 U.S. 678, 685 (1977) (striking down restriction on contraceptives because "decisions [about] whether to accomplish or to prevent conception are among the most private and sensitive"), *with* Aneesha Cheedalla & Carolyn B. Sufrin, *Contraception Policies in U.S. Jails, Prisons, and Juvenile Detention Systems*, J. CORR. HEALTH CARE (Dec. 2021),

10

private mail,[7] or making or receiving private phone calls[8]—no constitutional justification needed. Neither logic nor any reasonable construction of *Salerno*, which at its core affirmed the primacy of pretrial liberty, permits that dangerous proposition.

## CONCLUSION

For the reasons stated above, *amicus* respectfully urges the Court not to insulate conditions of pretrial release from constitutional scrutiny.

---

https://perma.cc/574Y-X4WR (noting that many detention facilities restrict access to contraceptives).

[7] *Compare United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970) (noting "significant Fourth Amendment interest" "in the privacy of . . . first-class mail"), *with* FED. BUREAU OF PRISONS, MAIL MANAGEMENT MANUAL (2011), https://perma.cc/7X3Z-YHJK ("[A]ll incoming general correspondence, and all outgoing mail . . . is subject to random reading by staff.").

[8] *Compare Katz v. United States*, 389 U.S. 347, 352 (1967) ("[A] person in a telephone booth may rely upon the protection of the Fourth Amendment. [He] is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world."), *with United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996) ("[N]o prisoner should reasonably expect privacy in his outbound telephone calls . . . .").

11

Dated: January 10, 2023                Respectfully submitted,

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni
Ryan Downer
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Ste. 800
Washington, D.C. 20009
(202) 894-6132

*Counsel for Amicus Curiae*

**ADDENDUM**

Other cases related to pretrial detention and release litigated by Civil Rights Corps include *Hester v. Gentry*, No. 18-13894 (11th Cir. 2022); *Daves v. Dallas Cnty., Tex.*, No. 18-11368 (5th Cir. 2022); *Singleton v. Cannizzaro*, No. 19-30197 (5th Cir. 2020); *ODonnell v. Harris Cnty.*, No. 17-20333 (5th Cir. 2018); *Walker v. City of Calhoun*, No. 17-13139 (11th Cir. 2018); *ODonnell v. Harris Cnty.*, No. 16-CV-01414 (S.D. Tex. 2016); *McNeil v. Community Probation Servs.*, No. 18-CV-00033 (M.D. Tenn. 2018); *Torres v. Collins*, No. 20-CV-00026 (E.D. Tenn. 2020); *Daves v. Dallas Cnty.*, No. 18-CV-00154 (N.D. Tex. 2018); *Dixon v. City of St. Louis*, No. 19-CV-00112 (E.D. Mo. 2019); *Schultz v. State*, No. 17-CV-00270 (N.D. Ala. 2017); *Edwards v. Cofield*, No. 17-CV-00321 (M.D. Ala. 2017); *Caliste v. Cantrell*, No. 17-CV-06197 (E.D. La. 2017); *Jones v. City of Clanton*, No. 15-CV-00034 (M.D. Ala. 2015); *Rodriguez v. Providence Comm. Corr., Inc.*, No. 15-CV-01048 (M.D. Tenn. 2015); *Cooper v. City of Dothan*, No. 15-CV-00425 (M.D. Ala. 2015).

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Brief of *Amicus Curiae* Civil Rights Corps in Support of Neither Party** on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 10, 2023           /s/ Ellora Thadaney Israni
                                                        Ellora Thadaney Israni
                                                        Of Counsel for *Amicus Curiae*