No. 22-50314

# In the
# United States Court of Appeals
# for the Ninth Circuit

◆

UNITED STATES OF AMERICA,

*Plaintiff–Appellee,*

v.

JESUS PEREZ-GARCIA,

*Defendant–Appellant.*

◆

On Appeal from the United States District Court
for the Southern District of California
Case No. 22-CR-1581-GPC-2

◆

**BRIEF OF *AMICI CURIAE* FIREARMS POLICY COALITION, FPC ACTION FOUNDATION, SECOND AMENDMENT LAW CENTER, CALIFORNIA RIFLE & PISTOL ASSOCIATION, SECOND AMENDMENT FOUNDATION, RUTHERFORD INSTITUTE, AND CATO INSTITUTE IN SUPPORT OF APPELLANT AND REVERSAL**

◆

JOHN W. WHITEHEAD
THE RUTHERFORD INSTITUTE
109 Deerwood Road
Charlottesville, VA 22911

C.D. MICHEL
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd.
Suite 200
Long Beach, CA 90802

JOSEPH G.S. GREENLEE
    *Counsel of Record*
FPC ACTION FOUNDATION
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149
(916) 517-1665
jgreenlee@fpclaw.org

ADAM KRAUT
SECOND AMENDMENT FOUNDATION
12500 N.E. Tenth Place
Bellevue, WA 98005

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici Curiae* make the following statements:

**Firearms Policy Coalition** has no parent corporation, and as a non-stock nonprofit corporation, no publicly held corporation could own any share of its stock.

**FPC Action Foundation** has no parent corporation, and as a non-stock nonprofit corporation, no publicly held corporation could own any share of its stock.

**Second Amendment Law Center** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

**California Rifle & Pistol Association** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

**Second Amendment Foundation** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

**Rutherford Institute** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

i

**Cato Institute** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................... i

TABLE OF CONTENTS ................................................................. iii

TABLE OF CITED AUTHORITIES ........................................... iv

STATEMENT OF *AMICI CURIAE* ..................................... 1

CONSENT TO FILE ................................................................. 3

SUMMARY OF ARGUMENT ................................................. 3

ARGUMENT ............................................................................. 5

    I.   The right to keep and bear arms is fundamental to our scheme of ordered liberty, and not a second-class right to be denied wholesale to presumed-innocent citizens. ...................................... 5

    II.  The Southern District of California's standard firearm ban for pretrial releasees contravenes the presumption of innocence..... 11

CONCLUSION ......................................................................... 15

CERTIFICATE OF COMPLIANCE ....................................... 17

CERTIFICATE OF SERVICE ................................................. 18

# TABLE OF CITED AUTHORITIES

## Cases

*City of Boerne v. Flores,*
    521 U.S. 507 (1997)................................................................. 8

*Coffin v. United States,*
    156 U.S. 432 (1895)............................................................... 11

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)........................................................*passim*

*Estelle v. Williams,*
    425 U.S. 501 (1976)............................................................... 11

*In re Winship,*
    397 U.S. 358 (1970)............................................................... 11

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010).......................................................... 4, 5, 6

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    142 S. Ct. 2111 (2022) ...................................................*passim*

*Taylor v. Kentucky,*
    436 U.S. 478 (1978).......................................................... 11, 12

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013) ............................................... 8

*United States v. Salerno,*
    481 U.S. 739 (1987)...................................................... 3, 12, 13

*United States v. Scott,*
    450 F.3d 863 (9th Cir. 2006) ..................................... 12, 13, 14

*United States v. Willy,*
    40 F.4th 1074 (9th Cir. 2022)............................................... 14

*Virginia v. Black,*
    538 U.S. 343 (2003)............................................................... 15

*Young v. Hawaii,*
  992 F.3d 765 (9th Cir. 2021),
  *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022) ...................... 11

## Constitutional Provisions

U.S. CONST. amend. I ......................................................................... 5, 9, 15

U.S. CONST. amend. II.........................................................................*passim*

U.S. CONST. amend. IV ............................................................................ 9, 12

U.S. CONST. amend. V ................................................................................ 11

U.S. CONST. amend. XIV .......................................................................... 6, 11

## Statutes and Regulations

18 U.S.C. §3142(c) .................................................................................... 3, 8

## Other Authorities

Coffee Jr., John C., *Does "Unlawful" Mean "Criminal"?: Reflections
  on the Disappearing Tort/Crime Distinction in American Law*,
  71 B.U.L. REV. 193 (1991) .................................................................. 10

Fields, Gary & Emshwiller, John R., *Many Failed Efforts to Count
  Nation's Federal Criminal Laws*, WALL STREET JOURNAL, July 23,
  2011................................................................................................... 10

## STATEMENT OF *AMICI CURIAE*

**Firearms Policy Coalition (FPC)** is a nonprofit organization devoted to advancing individual liberty and defending individual rights, including those protected by the Constitution. FPC accomplishes its mission through legislative, regulatory, legal, and grassroots advocacy, education, and outreach programs.

**FPC Action Foundation (FPCAF)** is a nonprofit organization dedicated to restoring human liberty and protecting the rights enshrined in the Constitution. FPCAF conducts charitable research, education, public policy, and legal programs.

**Second Amendment Law Center** is a 501c3 nonprofit corporation headquartered in Henderson, Nevada. The Center promotes and defends the individual right to keep and bear arms. The Center also educates the public about the social utility of private firearm ownership and publishes accurate and truthful historical, criminological, and technical information about firearms.

**California Rifle & Pistol Association (CRPA)** is a 501c4 nonprofit organization dedicated to defending the Second Amendment and preserving the constitutional and statutory rights of gun ownership.

1

CRPA also promotes shooting sports, provides education and training, and organizes competitions for adult and junior shooters.

**Second Amendment Foundation (SAF)** is a nonprofit foundation dedicated to protecting the right to arms through educational and legal action programs. SAF has over 720,000 members and supporters in every State of the Union. SAF organized and prevailed in *McDonald v. City of Chicago*.

**Rutherford Institute** is a nonprofit civil liberties organization founded in 1982 by its President, John W. Whitehead. The Institute provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms.

**Cato Institute** is a non-partisan public-policy research foundation dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Project on Criminal Justice focuses on the proper role of the criminal sanction in a free society, the scope of substantive criminal liability, and the protection of constitutional and statutory safeguards for criminal suspects and defendants.

**CONSENT TO FILE**

All parties consented to the filing of this brief.[1]

**SUMMARY OF ARGUMENT**

The district courts' authority to impose a firearm possession ban as a condition of pretrial release is of recent vintage. In the Bail Reform Act of 1984, Congress for the first time required district courts to consider danger to others or the community, in addition to risk of flight, in their bail decisions. *See United States v. Salerno*, 481 U.S. 739, 742 (1987). Reflecting this broader inquiry, Congress also expanded the range of permissible conditions of release when release on personal recognizance or an unsecured appearance bond do not suffice to reasonably assure the person's appearance at trial and the safety of the community. One of those newly added conditions is that a pretrial releasee "refrain from possessing a firearm." 18 U.S.C. §3142(c)(viii).

Since the enactment of the Bail Reform Act of 1984, the Supreme Court has confirmed that the Second Amendment protects an individual

---

[1] No counsel for a party in this case authored this brief in any part. No party or counsel for a party contributed money intended to fund the brief's preparation or submission. Only *amici* and their members contributed money intended to fund the preparation or submission of this brief.

3

right to possess and publicly carry arms belonging to all Americans, which is fundamental to our scheme of ordered liberty. *See District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Infringements of this fundamental right are lawful only if they are consistent with this Nation's historical tradition of firearm regulation. *Id.* at 2129-30.

The Court has repeatedly underscored that the right to keep and bear arms is not a "'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id.* at 2156 (quoting *McDonald*, 561 U.S. at 780 (plurality opinion)). Yet some district courts continue to treat the Second Amendment as a second-class constitutional guarantee. The Southern District of California, for instance, imposes a standard condition banning virtually all pretrial releasees, regardless of the nature and seriousness of the charges against them, from possessing *any firearms*, *anywhere*, for *any purpose*. Other district courts, while nominally lacking such a standard condition, impose a firearm-possession ban routinely as a condition of pretrial release, without a

4

meaningful assessment of the person's risk of firearm-related dangerousness.

The Supreme Court's confirmation that the Second Amendment protects a fundamental right, together with the venerable presumption of innocence, demand a forceful, unambiguous repudiation of the lower courts' practices. The government could not establish a default rule extinguishing pretrial releasees' First Amendment rights. "The Second Amendment is no different." *Heller*, 554 U.S. at 635.

## ARGUMENT

### I. The right to keep and bear arms is fundamental to our scheme of ordered liberty, and not a second-class right to be denied wholesale to presumed-innocent citizens.

The Second Amendment protects a "pre-existing," "individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592, 624; *Bruen*, 142 S. Ct. at 2135. The right to keep and bear arms is "deeply rooted in this Nation's history and tradition" and "fundamental to our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-78, 791. The founding generation deemed the right essential to the survival of the new republic and to maintaining the balance of power between the People and their government. *Id.* at 768-69. Leading legal commentators of the time

5

considered it "the true palladium of liberty," which "offers a strong moral check against the usurpation and arbitrary power of rulers." *Id.* at 769-70 (internal quotations omitted).

While the right to keep and bear arms was codified in part "to prevent elimination of the militia," it remains "highly valued for purposes of self-defense," *id.* at 770*,* which is a "*central component* of the right," *Heller*, 554 U.S. at 598-99. Indeed, one of the core purposes of the Civil Rights Act of 1866 and of the Fourteenth Amendment was to ensure the right of all citizens, including newly freed Blacks, to keep and bear arms for their self-defense. *McDonald*, 561 U.S. at 770-76.

Because the right to arms is "among those fundamental rights necessary to our system of ordered liberty," *id.* at 782, the Supreme Court emphatically rejected the notion that it "should be singled out for special—and specially unfavorable—treatment," *id.* at 778-79. That is notwithstanding the right's public-safety implications, which are not unique to the Second Amendment. "All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *Id.* at 783. Courts may therefore not treat the Second Amendment "as a second-class right, subject to an

6

entirely different body of rules than the other Bill of Rights guarantees."
*Id*. at 780; *see also Bruen*, 142 S. Ct. at 2156.

In the wake of these decisions, courts have a clear duty to scrutinize any infringements of the right to keep and bear arms. And to ensure they are constitutional, courts may consider *only* "the Second Amendment's text, as informed by history." *Id*. at 2127. This approach forecloses "[a]ny judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Id*. at 2129 (internal quotations omitted). "The very enumeration of the right takes out of the hands of government— even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634.[2]

---

[2] Under means-end scrutiny, courts often deferred uncritically to legislatures' judgments. *Bruen*, 142 S. Ct. at 2131. In this Circuit, the government ultimately won *all* 50 post-*Heller* Second Amendment cases decided before *Bruen. Duncan v. Bonta*, 19 F.4th 1087, 1165 (9th Cir. 2021) (VanDyke, J., dissenting), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), *and vacated and remanded*, 49 F.4th 1228 (9th Cir. 2022). In effect, "the Second Amendment [was] becoming '[a] constitutional guarantee subject to future judges' assessments' which is 'no constitutional guarantee at all.'" *Peruta v. Cnty. of San Diego*, 824

The Appellant's Second Amendment challenge to the firearm-possession ban imposed as a condition of his pretrial release directly implicates these elemental principles. It is immaterial that, in Congress's judgment, the imposition of a firearm-possession ban may "reasonably assure the…safety of any other person or the community" in certain cases. 18 U.S.C. §3142(c). Rather, "[t]he boundaries of this [Second Amendment] right are defined by the Constitution. They are not defined by Congress." *United States v. Chovan*, 735 F.3d 1127, 1148 (9th Cir. 2013) (Bea, J., concurring); *see also City of Boerne v. Flores*, 521 U.S. 507, 545 (1997) (O'Connor, J., dissenting) ("Congress lacks the ability independently to define or expand the scope of constitutional rights by statute."). Relatedly, it is immaterial whether §3142(c) would survive means-end scrutiny or whether courts would defer to congressional judgment if such an inquiry were appropriate. Rather, the Second Amendment itself "is the very *product* of an interest balancing by the people." *Heller*, 554 U.S. at 635. It is also immaterial that, even after

---

F.3d 919, 956 (9th Cir. 2016) (Callahan, J., joined by Bea and N.R. Smith, JJ., dissenting) (quoting *Heller*, 554 U.S. at 634), *overruled by Bruen*, 142 S.Ct. 2111.

*Heller*, district courts have routinely imposed firearm-possession bans on pretrial releasees.

The relevant inquiry is whether the Southern District of California's standard firearm-possession ban for pretrial releasees, as applied to Appellant, is consistent with "the Second Amendment's text and historical understanding." *Bruen*, 142 S. Ct. at 2131. It is not. "The people" protected by the Second Amendment, like the First and Fourth Amendments, are "all members of the political community." *Heller*, 554 U.S. at 580. This community undoubtedly includes citizens like Appellant, who is presumed innocent and is not otherwise disqualified from keeping arms. Therefore, the Second Amendment presumptively protects Appellant's right to keep and bear arms while on pretrial release. *Bruen*, 142 S. Ct. at 2129-30. And the government has failed to demonstrate below that his firearm ban is consistent with any historical tradition of firearm regulation. *Id*. at 2130.

It bears emphasis, moreover, that the Southern District of California's standard firearm-possession ban makes the exercise of Second Amendment rights by pretrial releasees subject to Congress's virtually

unlimited power to create federal crimes[3]; the government's practically unchecked prosecutorial discretion; and the court's decree that pretrial releasees should be wholly stripped of their fundamental right to keep and bear arms simply by virtue of their charges. Indeed, the Southern District of California prohibits virtually all pretrial releasees from possessing *any firearms*, *anywhere*, for *any purpose*—even a handgun in the home, "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," where the need for self-defense is "most acute." *Heller*, 554 U.S. at 628-29. In so doing, the Southern District of California "has not merely demoted" the Second Amendment right of pretrial releasees to "the status of 'a second-class right' but has extinguished its status as a right altogether." *Young v. Hawaii*, 992 F.3d 765, 860 (9th Cir. 2021) (O'Scannlain, J., joined by Callahan, Ikuta, and

---

[3] There are over 300,000 federal crimes—so many, that the Department of Justice is unable to count them. John Coffee, *Does "Unlawful" Mean "Criminal"?: Reflections on the Disappearing Tort/Crime Distinction in American Law*, 71 B.U.L. REV. 193, 216 (1991); Gary Fields & John Emshwiller, *Many Failed Efforts to Count Nation's Federal Criminal Laws*, WALL STREET JOURNAL, July 23, 2011, https://www.wsj.com/articles/SB100014240527023043198045763896010 79728920.

R. Nelson, JJ., dissenting), *cert. granted*, *judgment vacated*, 142 S. Ct. 2895 (2022).

## II. The Southern District of California's standard firearm ban for pretrial releasees contravenes the presumption of innocence.

The firearm ban contravenes the presumption of innocence: a deeply held principle, long predating the Constitution, that "is the undoubted law, axiomatic and elementary, and [whose] enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). As a "bedrock principle," it is constitutionally required. *In re Winship*, 397 U.S. 358, 363 (1970). The fundamental principle that one is innocent until proven guilty—and the related principle that the prosecution must establish guilt beyond a reasonable doubt—are implicit in the concept of ordered liberty and firmly embedded within the "due process of law" protected by the Fifth and Fourteenth Amendments. *Taylor v. Kentucky*, 436 U.S. 478, 486 n.13 (1978) (citing *Estelle v. Williams,* 425 U.S. 501, 503 (1976)).

The presumption of innocence reflects a long-standing societal judgment about the degree of legal process that is required to strip a person of his liberty interests. The presumption is a "shorthand

11

description of the right of the accused to remain inactive and secure, until the prosecution has taken up its burden." *Id.* at 483 n.12. And it has important corollaries. First, a pretrial releasee has "privacy and liberty interests…far greater" than a convicted person. *United States v. Scott,* 450 F.3d 863, 873 (9th Cir. 2006) (stressing the "transformative changes" and "the severe and fundamental disruption in the relationship between the offender and society" occasioned by a conviction) (internal quotations omitted). Second, "[t]hat an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody." *Id.* at 874. That is because a defendant is "constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt." *Id.* at 873-74 (internal quotations omitted).

From these basic principles, this Court concluded that a standard condition of pretrial release requiring pretrial releasees to submit to warrantless and suspicionless searches for drugs violated the Fourth Amendment. *See id.* at 872-75. This Court acknowledged that the Supreme Court has upheld the constitutionality of pretrial detention on grounds of dangerousness in *Salerno*, but emphasized that the Bail

Reform Act "contained important safeguards, including the requirements that defendant be accused of a particularly serious crime and that dangerousness be proved to a neutral judicial officer by clear and convincing evidence." *Id*. at 874 (citing *Salerno*, 481 U.S. at 747, 750-52). But "[n]either *Salerno* nor any other case authorizes detaining someone in jail while awaiting trial, or the imposition of special bail conditions, based merely on the fact of arrest for a particular crime." *Id*. Therefore, "if a defendant is to be released subject to bail conditions that will help protect the community from the risk of crimes he might commit while on bail, the conditions must be justified by a showing that defendant poses a heightened risk of misbehaving while on bail." *Id*. "The government cannot…short-circuit the process by claiming that the arrest itself is sufficient to establish that the conditions are required." *Id*.

The Southern District of California's standard firearm ban for pretrial releasees similarly violates the presumption of innocence and "short-circuit[s] the process," *id*., by presuming that all pretrial releasees— regardless of whether they are charged with felonies or misdemeanors, the specific allegations underlying the charges, the nature of the alleged offense, or the individual's personal background and characteristics—

13

pose a danger of firearms-related violence. Indeed, if the presumption of innocence is incompatible with an "assumption" that pretrial releasees are "more likely to commit crimes than other members of the public, without an individualized determination to that effect," *id.* at 874, it is equally incompatible with an assumption that pretrial releasees are more likely to pose a danger of firearms-related violence simply by virtue of the charges, without an individualized determination of dangerousness.

The Second Amendment buttresses this conclusion. Because the Second Amendment guarantees a constitutional right to keep and bear arms, it encompasses a presumption of lawful possession and use of arms. *See Bruen*, 142 S. Ct. at 2126 ("[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and it is the government's burden to demonstrate that "the individual's conduct falls outside the Second Amendment's 'unqualified command.'"); *United States v. Willy*, 40 F.4th 1074, 1080 (9th Cir. 2022) (because Washington State is an open-carry state, "it is presumptively legal to carry a firearm *openly*" and the mere fact that the defendant displayed a weapon did not create reasonable suspicion of any criminal activity). The Southern District of California's assumption that

14

criminal charges suffice to establish a person's risk of firearm dangerousness contradicts the Second Amendment's presumption of legality and the presumption of innocence. *Cf. Virginia v. Black*, 538 U.S. 343, 365-67 (2003) (because the First Amendment protects expressive speech, statutory presumption that cross burning is prima facie evidence of an intent to intimidate is unconstitutional).

## CONCLUSION

The district court's decision should be reversed.

Respectfully submitted,

/s/ *Joseph G.S. Greenlee*
JOSEPH G.S. GREENLEE
FPC ACTION FOUNDATION
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149
(916) 517-1665
jgreenlee@fpclaw.org
*Counsel of Record*

ADAM KRAUT
SECOND AMENDMENT FOUNDATION
12500 N.E. Tenth Place
Bellevue, Washington 98005
(800) 426-4302
akraut@saf.org

JOHN W. WHITEHEAD
THE RUTHERFORD INSTITUTE
109 Deerwood Road

15

Charlottesville, VA 22911
(434) 978-3888
legal@rutherford.org

C.D. MICHEL
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd.
Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 2,797 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point, proportionally spaced Century Schoolbook font.

Dated this 10th day of January 2023.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2023, I served the foregoing brief via the CM/ECF system for the United States Court of Appeals for the Ninth Circuit, which will distribute the brief to all attorneys of record in this case. No privacy redactions were necessary.

Dated this 10th day of January 2023.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*