IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) U.S.C.A. No. 22-50314, 22-50316 |
| | ) U.S.D.C. No. 22-CR-1581-GPC-2 |
| | )  21-CR-3101-JLS-1 |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| JESUS PEREZ-GARCIA, | ) **REPLY IN SUPPORT OF** |
| | ) **MOTION TO DISMISS** |
| Defendant-Appellant, | ) **APPEALS AS MOOT** |
| | ) |
| v. | ) |
| | ) |
| JOHN FENCL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

In response to the motion to dismiss Mr. Fencl's and Mr. Perez-Garcia's appeals as moot ("Resp."), the government raises three arguments: (1) the case is not moot at all, Resp. 4; (2) even if the case is moot, this Court has discretion to issue a judicial opinion, Resp. 1–2; and (3) this Court should exercise its discretion in favor of issuing that opinion, Resp. 3, 5–6. Each of these contentions is wrong.

***First***, in a paragraph devoid of citations, the government suggests that this case might still be live. Resp. 4. It is not. As an initial matter, it is "clear that . . . [Mr. Fencl's] claim to *pretrial* [release conditions]

1

was moot once he was convicted." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (emphasis original) (opining on related issue of pretrial bond). It does not matter that Mr. Fencl is now on *post-conviction* release with a firearms condition. *Contra* Resp. 4. The question presented in this appeal is whether presumptively innocent *pretrial* releasees have a right to possess arms. Fencl Opening Brief ("FOB") 11; Fencl Answering Brief 6. Even if this Court determined that they did have such a right, it would not affect Mr. Fencl's release conditions now. And even if the condition were lifted, he still would not be able to keep arms in the home, *see* 18 U.S.C. § 922(g)(1), which is all the relief he has ever requested. FOB 11.

In the same vein, this appeal cannot give Mr. Fencl a defense to revocation or other sanctions if he violates § 922(g)(1) by possessing firearms post-conviction. *Contra* Resp. 4. And hypothetical future crimes are irrelevant to the analysis anyway. "[A]ttempting to anticipate whether and when [Mr. Fencl] will be charged with crime . . . takes us into the area of speculation and conjecture," which cannot avoid mootness. *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).

As for Mr. Perez-Garcia, the government does not appear to dispute that his case is moot under present circumstances. But the government suggests that this appeal would be revived if Mr. Perez-Garcia sought release again, if that request were granted, and if the same condition were re-imposed. Resp. 4. "[A] mere physical or

2

theoretical possibility" of future injury is not sufficient to avoid mootness, however. *Murphy*, 455 U.S. at 482. "[T]here must be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." *Id.* To release Mr. Perez-Garcia again, a court would have to find—over a statutory presumption of detention—that further release could still assure his appearance at trial. 18 U.S.C. § 3142(e)–(f). The government has provided no reason to suppose a judge would make that finding following a months-long failure to appear. Thus, both cases are moot.

***Second***, the government argues that this Court may hand down an opinion even if the case is moot. But the government cites decisions from this Court holding that the Court may decline to *vacate* an opinion that was issued *before* a case moots. Resp. 1–2 (citing *Armster v. U.S. Dist. Ct.*, 806 F.2d 1347, 1355 (9th Cir. 1986), and *Dickens v. Ryan*, 744 F.3d 1147, 1147–48 (9th Cir. 2014) (en banc)). Here, the government urges this Court to do something quite different: to *issue* an opinion *after* a case moots.

Precedent requires this Court to decline that invitation. *See Env't Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071 (9th Cir. 2001) (emphasis added) (hereinafter, "EPIC"). In *EPIC*, a district court issued a preliminary injunction. *Id.* at 1073. Afterward, the enjoined party moved to dismiss the case as moot. *Id.* at 1074. The district court

3

nevertheless issued an opinion supporting the original preliminary injunction with findings of fact and conclusions of law. *Id.*

This Court found that the district court exceeded its Article III authority. "Article III of the Constitution prohibits federal courts from taking further action on the merits in moot cases," the Court explained. *Id.* at 1076. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Thus, to "render an opinion in spite of knowing the cause was moot" is "to flout the dictates of Article III." *Id.* at 1077. This Court therefore granted the appellant's request to vacate the "order, filed after the case had become moot, outlining the district court's reasons for granting [the] preliminary injunction," instructing that the court "vacate its statements on the merits of EPIC's case made after there was no longer an Article III case or controversy." *Id.* at 1073. The implications for this case are clear: This Court may not now issue an opinion, make statements on the merits, or take further (non-administrative, *see infra*, n.1) action in this appeal.

Constitutional text leads to the same conclusion. The government provides no legal reason why a case and controversy would be required to announce a bottom line result, but not to issue a full-fledged judicial opinion. Article III sweeps much more broadly: It limits all exercises of

4

the "judicial power" to cases and controversies. U.S. Const., Art. III, § 2. To agree with the government, this Court would have to hold that issuing a judicial opinion is not an exercise of the "judicial power." But perhaps the most quintessential judicial act of an Article III court is to "say what the law is." *United States v. Windsor*, 570 U.S. 744, 762 (2013) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). And that is exactly what a judicial opinion would do: It would answer concrete legal questions and, if published, bind future litigants. That is a much greater exercise of judicial authority than merely stating, "Affirmed."

Against all this, the government cites a footnote from one Second Circuit case, which came to the opposite conclusion. *In re Grand Jury Investigation*, 399 F.3d 527, 529 n.1 (2d Cir. 2005). But not only does that case conflict with *EPIC*, it is also unpersuasive on its own terms. The Second Circuit reasoned that if courts may decline to vacate *past* action after a case moots, they must be able to take *future* action in a moot case. *Id*. That does not follow, as *EPIC*'s logic and constitutional text show.[1] Nor has this Court "cited approvingly" the part of *In re*

---

[1] The Second Circuit also cited *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994). But that case merely reaffirmed that, even in moot cases, courts may still take administrative actions like awarding attorney's fees, dismissing the case, or vacating prior judgments. The Court reaffirmed, however, that "[i]f a judgment has become moot while awaiting review, this Court may not consider its merits." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21

*Grand Jury*'s reasoning on which the government relies. *Contra* Resp. 2. Because *EPIC* is both binding and better reasoned, this Court must and should follow it.

**_Third_**, even if the government were right, that would mean only that this Court has discretion over whether to issue an opinion. Any such discretion should be exercised in favor of restraint.

For one, fairness concerns militate in favor of dismissal. On the one hand, in these circumstances, there is no realistic possibility of gamesmanship on the defense side. *Contra* Resp. 5–6. The defense can unduly moot a pretrial release conditions appeal only by (1) prompting revocation of pretrial release, or (2) rushing to trial before they are ready. (Of course, going to trial when ready is not gamesmanship.) Both options would work great harm to the defendant, as he would either lose his liberty or face trial unprepared. And the defendant would gain nothing from the maneuver. No ethical defense attorney would advise that, and no client would willingly go along.

To put a finer point on it, it is more than a little silly to suggest that Mr. Perez-Garcia absconded to rob the government of a favorable opinion about pretrial release conditions. And even more farfetched is the implication that Mr. Fencl went to trial (and lost)—two years after

---

(1994) (simplified). That is why a Court may issue the mandate even after a case moots, though it otherwise lacks the power to take action on the merits. *See* AAB 2 (conflating these things).

arrest and over nine months after oral argument—as a strategic maneuver.

On the other hand, the government's proposal would leverage mootness to give the government an unfair advantage. The government would receive its favorable opinion, but the defense would have no opportunity to seek further review. That is particularly undesirable in this quickly evolving, hotly debated area of law, where decisions are ripe for en banc reconsideration and even certiorari. *See, e.g.*, *United States v. Rahimi*, 143 S. Ct. 2688 (2023); *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (en banc).

Those same, rapid changes in the law countermand the government's suggestion that writing an opinion would save resources.[2] *See* Resp. 3. Since oral argument, the Supreme Court has granted certiorari and heard argument on a *Bruen* issue, *United States v. Rahimi*, 143 S. Ct. 2688 (2023); this Court has handed down at least three decisions in *Bruen* cases, *Teter v. Lopez*, 76 F.4th 938, 942 (9th Cir. 2023), *Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023), *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023); and this Court's sister circuits have decided many more, *e.g.*, *Range*, 69 F.4th 96; *United States*

---

[2] Notably, though the government cites several cases that value a court's prior resource investment, all arise in the *voluntary dismissal* context—i.e., when an appellant asked the court to review a case, only to change its mind after all concerned had invested time and energy. Resp. 3. A different equitable calculus applies here, where the case mooted in the ordinary course.

7

*v. Daniels*, 77 F.4th 337 (5th Cir. 2023). These decisions have come to divergent conclusions about *Bruen*'s basic methodology, as well as the relevant history. The original briefing in this appeal—which, given the word limit, was sparse (and not particularly resource intensive) to begin with—does not account for any of these developments. The government's proposal would therefore either have this Court decide this issue without full information or else do the heavy lifting itself. That is a poor use of this Court's time, especially when this Court's labors will not have real-world effects in the cases before it.

On the other hand, an opinion in a later, live case would have greater value to the legal community. *See* Resp. 3–4. This Court and the parties would have additional guidance from the Supreme Court about how to deploy the *Bruen* test. That guidance, and other court of appeals decisions, would be incorporated into the briefing. And this Court may have a chance to consider the issue en banc if it so desired. These differences would lead to a more informed and more considered opinion.

Finally, Mr. Fencl's case belies the suggestion that pretrial release conditions appeals will move too quickly to allow time to decide this issue later on. Resp. 5. It resolved over nine months after full briefing and oral argument, plenty of time to write a reasoned decision. *See, e.g.*, *Range*, 69 F.4th 96 (argument to decision in less than six months); *Daniels*, 77 F.4th 337 (argument to decision in less than three months).

8

Thus, whether as a matter of constitutional constraint or of sound discretion, this Court should not issue an opinion but should dismiss this case as moot.

Respectfully submitted,

DATED: November 8, 2023

 s/ Katie Hurrelbrink
Katie Hurrelbrink
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 544-2726/Fax: (619) 687-2666
Attorneys for Appellants