Nos. 22-50314 & 22-50316

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

JESUS PEREZ-GARCIA & JOHN FENCL,
DEFENDANTS-APPELLANTS

*On Appeal from the United States District Court
for the Southern District of California
22CR1581-GPC; 21CR3101-JLS*

**GOVERNMENT'S RESPONSE TO PETITION FOR VACATUR,
PANEL REHEARING, OR REHEARING EN BANC**

TARA K. MCGRATH
 *United States Attorney*

DANIEL E. ZIPP
 *Assistant U.S. Attorney*
 *Chief, Appellate Section*
 *Criminal Division*

ZACHARY J. HOWE
 *Assistant U.S. Attorney*

 *880 Front St., Rm. 6293*
 *San Diego, CA 92101*
 *(619) 546-8693*

**TABLE OF CONTENTS**

Introduction ............................................................... 1

Statement ................................................................. 4

Discussion ................................................................ 8

A. The Court should decline to review for "equitable vacatur." ............................................................... 8

   1. The case is now moot and *en banc* review will thus have no bearing on its result or on Fencl and Perez ... 8

   2. Other equitable concerns favor denying rehearing ... 10

   3. The concerns the petition raises are illusory. ........... 12

   4. The panel was not barred from issuing its opinion ... 16

B. The petition's merits points are irrelevant and unconvincing. ................................................... 18

Conclusion ................................................................ 19

Certificate of Compliance

**TABLE OF AUTHORITIES**

Cases:

   *Armster v. U.S. Dist. Ct.*,
     806 F.2d 1347 (9th Cir. 1982) ............................ 10, 11, 16

   *Bahr v. Regan*,
     6 F.4th 1059 (9th Cir. 2021) ............................................ 13

   *Container Stevedoring Co. v. Dir., Office of Workers Comp. Programs*,
     935 F.2d 1544 (9th Cir. 1991) ........................................ 13

*Does v. Wasden,*
  982 F.3d 784 (9th Cir. 2020) ...........................................13

*Duncan v. Bonta,*
  83 F.4th 803 (9th Cir. 2023) (en banc)...........................15

*Envtl. Prot. Info. Ctr., Inc. v. Pacific Lumber Co.,*
  257 F.3d 1071 (9th Cir. 2001) .................................16, 17

*Ex parte Quirin,*
  317 U.S. 1 (1942) ...........................................................16

*Hassoun v. Searls,*
  976 F.3d 121 (2d Cir. 2020)............................................16

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991) .........................................................13

*Naruto v. Slater,*
  888 F.3d 418 (9th Cir. 2018) .........................................11

*Robinson v. California,*
  371 U.S. 905 (1962) .......................................................17

*Tekoh v. Cnty. of Los Angeles,*
  997 F.3d 1260 (9th Cir. 2021) .......................................14

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
  513 U.S. 18 (1994) ...................................................12, 18

*United States v. Alaniz,*
  69 F.4th 1124 (9th Cir. 2023).........................................15

*United States v. American-Foreign S.S. Corp.,*
  363 U.S. 685 (1960) .........................................................8

*United States v. Berry,*
  --- F.Supp.3d ----, 2024 WL 1141720 (N.D. Ohio 2024)..14

*United States v. DeBorba,*
  --- F.Supp.3d ----, 2024 WL 342546 (W.D. Wash. 2024).14

*United States v. Duarte,*
   --- F.4th ----, 2024 WL 2068016 (9th Cir. 2024) .............14

*United States v. Flute,*
   951 F.3d 908 (8th Cir. 2020) ...........................................10

*United States v. Payton,*
   593 F.3d 881 (9th Cir. 2010) ................................9, 10, 17

*United States v. Perez-Garcia,*
   96 F.4th 1166 (9th Cir. 2024)................................. passim

*United States v. Sanchez-Gomez,*
   584 U.S. 381 (2018) .........................................................11

*United States v. Tapia-Marquez,*
   361 F.3d 535 (9th Cir. 2004) ...........................................10

*United States v. Torres,*
   869 F.3d 1089 (9th Cir. 2017) ......................................3, 9

Constitution and Statutes:

   U.S. Const. amend. II ......................................1, 3, 5, 14, 15

   18 U.S.C § 3142...............................................................1, 5

   21 U.S.C. § 952..................................................................4

   21 U.S.C. § 960...................................................................4

   26 U.S.C. § 5861(d) ...........................................................4

Rules:

   Fed. R. App. P. 35(a) ..........................................................8

# United States Court of Appeals
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

JESUS PEREZ-GARCIA & JOHN FENCL,
DEFENDANTS-APPELLANTS

*On Appeal from the United States District Court for the Southern District of California*
*22CR1581-GPC; 21CR3101-JLS*

### INTRODUCTION

The Bail Reform Act allows courts to bar gun possession to those on pretrial release "only if it is among the least restrictive ways to 'reasonably assure . . . the safety of any other person and the community.'" *United States v. Perez-Garcia*, 96 F.4th 1166, 1189 (9th Cir. 2024) (quoting 18 U.S.C. § 3142(c)(1)(B)). The "firearm condition is thus specifically designed to disarm those whose possession of firearms would pose an unusual danger to the community." *Id.* Fencl and Perez say the condition is unconstitutional. If they are right, that means courts must let those under felony indictment have guns even when doing so will endanger the community. And, of course, if the Second Amendment protects *that*, it is hard to

1

fathom any gun law that is valid. This Court, after analyzing historical gun restrictions, upheld the gun condition, thus rejecting those perilous conclusions.

Fencl and Perez seek rehearing. They note that "en banc merits review is off the table" since the "case is long moot." PFR 3, 12. But in their view, since the case was also moot before the panel issued its opinion, the Court should rehear it *en banc* and decide whether to grant what they call "equitable vacatur." PFR 3. The Court should deny that request. As the panel explained, it affirmed the gun conditions while Fencl and Perez were still subject to them. *Perez-Garcia*, 96 F.4th at 1173. True, it elucidated that decision in an opinion after Fencl was convicted and Perez absconded. *Id.* at 1172. But that opinion "merely explain[ed] the basis for [its] decision and d[id] not take further action on the merits." *Id.* at 1173. This Court is "not the only appellate court to follow this practice." *Id.* (collecting cases). Indeed, the "practice of bifurcating an expedited order with its reasoning is common, often necessary, and constitutional." *Id.*

Beyond that, a desire to have this Court debate whether equitable concerns warrant vacating the panel opinion is not enough to show the sort of extraordinary circumstances warranting the disfavored remedy of *en banc* review. Fencl and Perez would be hard-pressed to show otherwise, as this Court routinely declines *en banc*

review when, as here, "it would not alter the outcome" of a case. *United States v. Torres*, 869 F.3d 1089, 1107–08 (9th Cir. 2017) (collecting cases). That is especially true since, as the panel noted, equitable concerns in fact weigh decisively against the notion that it should not have explained its dispositive order. *See Perez-Garcia*, 96 F.4th at 1174.

Fencl and Perez do not claim the opinion will harm them in any way. Instead, they raise far-flung issues, like concerns over whether courts impose the gun condition without individualized findings in cases *other than theirs*, PFR 16–17, or suggestions that the panel did something improper based on the opinion's timing, breadth, and citations, PFR 2–7. They say the panel "transgressed" and "did not live up to" various "bedrock principles" and even raise the specter that it conspired to insulate itself from *en banc* review (though they allow that this motive "*may* not have motivated this panel in any way"). PFR 3, 8, 11–12 (emphasis added). But despite the intimations, Fencl and Perez fail to show that the panel acted improperly. Second Amendment challenges require "extensive and complicated historical analysis." *Perez-Garcia*, 96 F.4th at 1174. The panel here quickly issued a dispositive order answering the immediate question before it and then followed that order with its reasoned expla-

nation and historical analysis. That was not improper, and certainly not so extraordinary that it requires *en banc* review to consider vacatur. The Court should deny the petition.

### STATEMENT

In 2021, during a search of Fencl's house, "officers found more than 100 firearms . . . , including 'ghost guns,' thousands of rounds of ammunition, armor-piercing bullets, incendiary rounds, and even a tear-gas grenade." *Id.* at 1190. He "had previously been convicted for unlawful possession of a concealed gun without a license and arrested for possession of a privately made ghost gun." *Id.* The government charged Fencl with possessing unregistered short-barreled rifles and silencers under 26 U.S.C. § 5861(d). *Id.* at 1171.

Perez "was apprehended in a vehicle containing approximately eleven kilograms of methamphetamine and half a kilogram of fentanyl when it arrived at the port of entry." *Id.* at 1190. The government charged him with importing meth and fentanyl in violation of 21 U.S.C. §§ 952 and 960. *Id.* at 1171.

After Fencl and Perez were charged, "two magistrate judges released [them] pending their trials but subjected them to a condition of pretrial release that temporarily barred them from possessing firearms pending trial." *Id.* The judges did so under a law authoriz-

ing pretrial-release gun conditions—18 U.S.C § 3142 (c)(1)(B)—after they "concluded that the firearm condition was the least restrictive way to assure the safety of the community and the defendants' appearances in court." *Id.* "Two district court judges agreed." *Id.*

In December 2022, Fencl and Perez initiated an expedited appeal, arguing that the gun condition violated the Second Amendment and citing *Bruen*. *Id.* at 1171–72. The case was briefed and argued in just over a month. In its brief, the government argued, among other things, that the pretrial-release condition was valid based on historical pretrial-detention laws and historical laws addressing those posing a danger. ECF No. 14 at 11–17. In January 2023, this Court issued an order stating, "We affirm the district court's orders. An opinion explaining this disposition will follow." *Perez-Garcia*, 96 F.4th at 1172. Before the court issued that opinion, Fencl was convicted at trial and Perez "repeatedly fail[ed] to appear for hearings," prompting the court to issue an arrest warrant. *Id.*[1] Both defendants moved to dismiss their appeals as moot since they were no longer on pretrial release. *See id.*

---

[1] In March 2024, after the court issued the opinion in this case, the district court sentenced Fencl to six months in prison and three years of supervised release, the first year of which he will spend in home detention. *See* Judgment, *United States v. Fencl*, 21CR3101-JLS (ECF No. 178). Perez remains at large.

The panel held that the case was not moot since it had "already heard and conclusively resolved the merits of Appellants' appeal in a dispositive order." *Id.* at 1173. "By publishing the reasoning underlying our prior order," the panel explained, "we merely explain the basis for our decision and do not take further action on the merits of Appellants' claims. We are not the only appellate court to follow this practice." *Id.* (collecting cases). Indeed, "this appellate practice of bifurcating an expedited order with its reasoning is common, often necessary, and constitutional." *Id.* The panel also noted that "equity" weighed against dismissing, as doing so would "deprive the legal community" of a reasoned opinion on a "common, statutorily authorized practice;" would "incentivize parties to strategically prevent the publication of a decision" when, as here, the Court announces that the decision will be unfavorable to the movant; and "would likely force later panels to duplicate our efforts while confronting the exact same issues." *Id.* at 1174.

On the merits, the panel held that the gun condition was "justified by our nation's history of disarming criminal defendants facing serious charges pending trial." *Id.* at 1182. It explained that "the combination of separate but related founding era practices supports this conclusion: (1) most serious crimes were eligible for capital charges; (2) the government had the power to detain, and usually

did detain, defendants indicted on capital charges; and (3) once detained, criminal defendants were completely disarmed." *Id.* The panel outlined numerous founding-era sources illustrating those points. *See id.* at 1182–86.

As a "separate ground," the panel held that the "firearm condition is further justified by . . . a lengthy and extensive Anglo-American tradition of disarming individuals who are not law-abiding, responsible citizens." *Id.* at 1186. "In particular," the panel explained, "the historical record reflects that legislatures have long disarmed groups or individuals whose possession of firearms would pose an unusual danger, beyond the ordinary citizen, to themselves or others." *Id.* In reaching that conclusion, the panel catalogued numerous founding-era sources, including English laws, American laws restricting gun possession by various groups, American laws allowing disarmament for certain types of conduct, and proposals from state ratifying conventions. *See id.* at 1186–91.

Fencl and Perez now seek *en banc* review. They note that, "because the opinion issued after the case mooted, en banc merits review is off the table." PFR 12. Instead, they seek *en banc* review to address "equitable vacatur." PFR 3. If the Court finds that the case is not moot, then they seek rehearing on the merits. PFR 12–13.

*En banc* hearings are "not favored." Fed. R. App. P. 35(a). They are "the exception, not the rule," and "are convened only when extraordinary circumstances exist." *United States v. American-Foreign S.S. Corp.*, 363 U.S. 685, 689 (1960). That occurs when: "(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Fencl and Perez have not met those standards.

A.    The Court should decline to review for "equitable vacatur."

Review here would entail considering whether to grant a remedy (vacatur) that may not be available, will not alter the result in this case, and will not affect Fencl and Perez in any way. Beyond all of that, equitable considerations simply do not support vacatur here. The Court should thus deny *en banc* review.

      1.    *The case is now moot and* en banc *review will thus have no bearing on its result or on Fencl and Perez.*

Fencl and Perez say this case was moot once Fencl was convicted and Perez absconded. PFR 9–11. The panel appeared to agree but disagreed that it could not issue an opinion explaining its earlier

order. *See Perez-Garcia*, 96 F.4th at 1172–74. Thus, there is no dispute that the case is now moot.[2]

That matters, as this Court routinely finds that the sort of extraordinary circumstances warranting *en banc* review are absent when review "would not alter the outcome" of a case. *Torres*, 869 F.3d at 1107–08 (collecting cases). True, those cases involved different challenges, like merits challenges when any error would have been harmless or challenges to a test even when another test would have yielded the same result. *See id.* But the rationale—that this Court generally declines *en banc* review that would not alter the outcome of a case "even where the orderly development of [its] case law might benefit," *id.* (citation omitted)—holds true here.

The case Fencl and Perez cite is consistent with that conclusion. It addressed a case in which a judge *sua sponte* called for a vote on whether to hear a case *en banc*. *United States v. Payton*, 593 F.3d 881, 883 (9th Cir. 2010). After the parties briefed the issue, the case became moot, and the same judge asked the panel to vacate it opinion. *Id.* The panel, after weighing equitable concerns, declined. *See*

---

[2] The government raised the possibility that the case was not moot in response to Fencl and Perez's motion to dismiss for mootness, *see* ECF No. 26 at 4, but the panel did not accept that position. And that position is more tenuous now since Fencl was still subject to the gun condition at the time of the government's response (albeit on *post-trial* release) but is not subject to it now. *See supra* n.1.

*id.* at 883–86. It then noted, parenthetically, that the judge could still "seek an en banc rehearing for the purpose of vacating our decision." *Id.* at 886. The judge did so, but the Court declined *en banc* review. *Id.* And given those conclusions, the Court did not even need to address a more fundamental concern: whether vacatur is appropriate in criminal cases at all, and if so, when. *See United States v. Tapia-Marquez*, 361 F.3d 535, 537–38 (9th Cir. 2004) ("whether the vacatur rule . . . even applies in criminal cases" "is an open question"); *United States v. Flute*, 951 F.3d 908, 909 (8th Cir. 2020) (similar). Thus, given that vacatur would not change the outcome of the case, would not affect Fencl or Perez, and may not apply in criminal cases, this Court should decline *en banc* review here.

2.    *Other equitable concerns favor denying rehearing.*

The panel explained why equitable concerns weighed against declining to provide an explanation for its order. Those same concerns weigh against vacatur. First, vacatur "would deprive the legal community as a whole of 'the benefit of an appellate court decision that adjudicated properly presented questions concerning . . . specific constitutional rights." *Perez-Garcia*, 96 F.4th at 1174 (quoting *Armster v. U.S. Dist. Ct.*, 806 F.2d 1347, 1355 (9th Cir. 1982)). In this case, those questions implicate a "common, statutorily authorized practice," making their resolution all the more important.

Second, vacatur "could incentivize parties to strategically prevent the publication of a decision" by seeking vacatur when, as here, they have already seen "'the proverbial writing on the wall' in [the Court's] previously filed expedited order." *Id.* (quoting *Naruto v. Slater*, 888 F.3d 418, 421 n.3 (9th Cir. 2018)). That result would "us[e] considerable public resources" and "would not serve the interests of justice or judicial economy." *Id.*

Finally, vacatur "would not be pragmatic because it would likely force later panels to duplicate our efforts while confronting the exact same issues." *Id.* And since the case implicates "extensive and complicated historical analysis," cases raises "challenges to temporary pretrial conditions could resolve before an appellate court has the opportunity to issue a thorough opinion." *Id.* Thus, vacating the opinion "might preclude efficient judicial review of a likely recurring constitutional challenge." *Id.*

Fencl and Perez's responses are unconvincing. For example, they say avoiding waste and duplicative efforts are not valid concerns. PFR 7. But the case they cite as support held only that certain class-actions rules for mootness did not apply to non-class actions. *See United States v. Sanchez-Gomez*, 584 U.S. 381, 387 (2018). It said nothing about proper equitable concerns for equitable vacatur. Fencl and Perez also suggest that the Court could have written the

opinion faster. PFR 7–8. But the cases they cite as examples involved months of briefing and ample pre-argument time (and, in *Range*, full panel proceedings). Here, because Fencl and Perez filed a bond appeal seeking an immediate ruling on conditions of release, the two cases were docketed, briefed, and argued in just over a month. So it is no surprise that the panel took longer to write the opinion after argument than in those cases involving far more lead time. In short, equitable concerns support denying review here, and Fencl and Perez offer no convincing response.

### 3. *The concerns the petition raises are illusory.*

Fencl and Perez stress that the panel issued a broad alternative holding, PFR 4–5, used citations that appear in the Supreme Court briefing in *Rahimi* (a case addressing gun bans for those under domestic-violence restraining orders) but not the briefing here, PFR 5–6, and did not wait for the *Rahimi* decision, PFR 6–7. But that is all irrelevant. It is "inappropriate . . . to vacate mooted cases, in which we have no constitutional power to decide the merits, on the basis of assumptions about the merits." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27 (1994); *see also id.* at 28 ("We again assert the inappropriateness of disposing of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their merits."). So it must also be inappropriate

to vacate based on more tangential concerns that go not to the merits of a decision but its breadth, citations, and timing.

Still, the critiques are odd. "[A]lternative holdings are a common practice that prevents the overconsumption of adjudicative resources." *Bahr v. Regan*, 6 F.4th 1059, 1072 n.12 (9th Cir. 2021) (quoting *Container Stevedoring Co. v. Dir., Office of Workers Comp. Programs*, 935 F.2d 1544, 1549 n.5 (9th Cir. 1991)). Here, consistent with that practice, the Court affirmed the gun condition based on two rationales. *See Perez-Garcia*, 96 F.4th at 1182–86 (first rationale); *id.* at 1186–91 (second rationale). Both rationales were briefed and argued by the parties, and the panel simply agreed with the government in both instances. Fencl and Perez call that approach "overreach," PFR 3, but this Court calls it prudence.

As for citations, "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Does v. Wasden*, 982 F.3d 784, 793 (9th Cir. 2020) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)). So a court certainly is not limited to the universe of *citations* offered in support of a legal theory in short briefs filed in an expedited appeal. Thus, again, while Fencl and Perez suggest that the panel did something

wrong by citing authorities not in the briefs, this Court and the Supreme Court have expressly blessed the practice.[3]

Third, as a judge on this Court noted just last month in a Second Amendment case, "it is not our role as circuit judges to anticipate how the Supreme Court will decide future cases." *United States v. Duarte*, --- F.4th ----, 2024 WL 2068016, at *28 (9th Cir. 2024) (M. Smith, J., dissenting); *see also Tekoh v. Cnty. of Los Angeles*, 997 F.3d 1260, 1263 (9th Cir. 2021) (Miller, J., concurring in the denial of rehearing en banc) ("Our duty is to follow what the Supreme Court has done, not forecast what it might do."). The *Duarte* majority, by deciding the case before *Rahimi*, no doubt agreed. And other gun cases decided after the cert filing and even the cert grant in

---

[3] What's more, Fencl and Perez critique only non-case citations in one section of the opinion. They say 18 of the "about 20" sources in that section "appear in the *Rahimi* materials" but "not . . . elsewhere." PFR 5–6. But they give only three examples that *can*, in fact, be found in other briefs, articles, and cases. *See, e.g., United States v. Berry*, --- F.Supp.3d ----, 2024 WL 1141720, at *13–14 (N.D. Ohio 2024) (citing same three sources); *United States v. DeBorba*, --- F.Supp.3d ----, 2024 WL 342546, at *8 (W.D. Wash. 2024) (citing two sources). And they fail to note that most of the panel's citations (even those not in the briefs): (1) address groups of laws that are cited in the briefs (*e.g.*, disloyalty laws, affray laws, surety laws); (2) are discussed in articles cited in the briefs (*e.g.*, the Greenlee article); and/or (3) are cited in *Bruen*, *Heller*, or both (*e.g.*, the English Bill of Rights, convention proposals). *Compare Perez-Garcia*, 96 F.4th at 1186–91 *with* ECF No. 14 at 15–20.

*Rahimi* apparently agreed too. *See Duncan v. Bonta*, 83 F.4th 803, 806 (9th Cir. 2023) (en banc) (holding that ban on high-capacity magazines was likely to survive Second Amendment challenge); *United States v. Alaniz*, 69 F.4th 1124, 1129–30 (9th Cir. 2023) (upholding sentence enhancements for carrying guns during drug crimes). Thus, the panel's approach here was not "perplexing," PFR 5, but commonplace.

Finally, Fencl and Perez suggest that the panel may have purposefully issued its initial order to "lock in its own jurisdiction" and then waited to issue its opinion until after the case became moot to eliminate the possibility of *en banc* review. PFR 11–12. They say that procedure offers a "blueprint" for future members of this Court to "go big" and issue decisions they might not otherwise write. *Id*. Whatever Fencl and Perez mean by that, the record in *this* case is clear that the panel issued its order because it was asked to decide an expedited pretrial-release appeal on a short timeline, and that it then took the time to articulate the "extensive and complicated historical analysis" needed to resolve the constitutional question at issue. *Perez-Garcia*, 96 F.4th at 1174. The imagined threat of malfeasance by a hypothetical member of this Court, in some future case, is not a valid reason to vacate the panel decision here, let alone to grant *en banc* review.

4. *The panel was not barred from issuing its opinion.*

As the panel explained, "[t]here is a significant difference between a request to dismiss a case or proceeding for mootness prior to the time an appellate court has rendered its decision on the merits and a request made after that time." *Id.* at 1172–73 (quoting *Armster*, 806 F.2d at 1355). Only the former implicates jurisdiction. *Id.* at 1173. Here, the Court issued its decision on the merits while the gun conditions were still in place. *Id.* And while it issued its opinion later, that opinion "merely explain[ed] the basis for our decision and d[id] not take further action on the merits." *Id.* This Court is "not the only appellate court to follow this practice." *Id.* (collecting cases). Indeed, as the Second Circuit noted, even the Supreme Court "issu[ed] an opinion to explain a prior order in a habeas case that had become moot several months before the opinion issued." *Hassoun v. Searls*, 976 F.3d 121, 130 (2d Cir. 2020) (citing *Ex parte Quirin*, 317 U.S. 1 (1942)). In sum, the "practice of bifurcating an expedited order with its reasoning is common, often necessary, and constitutional." *Perez-Garcia*, 96 F.4th at 1173.

Fencl and Perez do not address those cases. Instead, they say the issue is governed by *Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*, 257 F.3d 1071 (9th Cir. 2001) (*EPIC*). PFR 9–11. But the panel addressed that case. *See Perez-Garcia*, 96

F.4th at 1173 n.6. In it, a court issued a preliminary injunction in 1998, the case became moot in February 1999, the court issued an order with "findings of fact and conclusions of law" that "adjudicated the issues raised by the parties" in March 1999, and the court issued an order dismissing the case for mootness and offering "clarification" of its prior order in May 1999. *EPIC*, 257 F.3d at 1073–74. This Court held that the prevailing party had standing to challenge the March and May orders and remanded to the district court to vacate the orders. *Id.* at 1075–75. But as the panel here noted, *EPIC* "said nothing about an appellate court's discretionary authority after rendering a decision on the merits but before a mandate issues." *Perez-Garcia*, 96 F.4th at 1173 n.6. Nor could it, as that fact pattern was not presented.

Still, even if *EPIC*'s applicability and consistency with the precedent the panel cited is debatable, for the reasons discussed above, it does not warrant the extreme remedy of *en banc* review. Indeed, in one case, the Supreme Court denied rehearing to decide whether to vacate even after it learned that the appellant had died before *any decision* on the merits—an example that is arguably "even more extreme" than the issue here. *Payton*, 593 F.3d at 885 n.3 (citing *Robinson v. California,* 371 U.S. 905 (1962)). The Court should likewise decline further review here.

B.  The petition's merits points are irrelevant and unconvincing.

Fencl and Perez request *en banc* merits review if the Court finds that the case is not moot. PFR 12–13. But there is no dispute that the case is moot, and the merits analysis is not relevant to whether to grant *en banc* review on the issue of vacatur. *See U.S. Bancorp Mortg. Co.*, 513 U.S. at 27–28. And as they note, there "is not space in this filing for detailed" analysis of the issues they raise, and those issues have "been extensively briefed in other cases" in any event. PFR 13. Thus, in short, there is no reason to grapple with those admittedly irrelevant and extensively briefed issues here.

Still, nothing in the decision warrants *en banc* review. The panel thoroughly analyzed the history relating to disarming those facing criminal charges and those posing unique dangers and held that those analogues justified the law here. *See Perez-Garcia*, 96 F.4th at 1182–91. Fencl and Perez raise various points but in essence say the panel drew analogies that were too broad, too vague, or altogether inapt. PFR 13–20. But the panel addressed and rejected similar arguments. *See Perez-Garcia*, 96 F.4th at 1185–86, 1191. More broadly, Fencl and Perez's critiques appear to rest on the assumption that only a dead-on historical copy of the law at issue can justify the law, an assumption that would do away with the analogical inquiry altogether. Under that approach, it is tough to see how any

gun law could stand. Indeed, their position here—that a court must allow someone under felony indictment to possess guns even if doing so would endanger the community—shows as much.

## CONCLUSION

The Court should deny the petition for vacatur, panel rehearing, or rehearing *en banc*.

Respectfully submitted,

TARA K. MCGRATH
  *United States Attorney*

DANIEL E. ZIPP
  *Assistant U.S. Attorney*
  *Chief, Appellate Section*
  *Criminal Division*

S/ ZACHARY J. HOWE
  *Assistant U.S. Attorney*

JUNE 3, 2024.

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 22-50314 & 22-5031

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: 4,180 .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/Zachary J. Howe    **Date** June 3, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                          *Rev. 12/01/2021*